MATILDA ADLER *vs.* SAFEGUARD INSURANCE COMPANY OF
NEW YORK.

SAME *vs.* HARRY A. BURNES.

Suffolk.   October 2, 1934. — November 27, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Insurance*, Fire: cancellation, return premium.

At the trial of an action for return premiums alleged to be due upon cancellation of a policy of fire insurance covering property of the plaintiff, evidence, that shortly before a sale of the property by the plaintiff, his representative told the agent through whom the policy was issued that the property was to be sold, that the prospective purchaser was unwilling to "take the insurance" and that the agent "would have to cancel it," showed at most that the plaintiff's representative had expressed an intention to cancel the policy at some time in the future, and did not warrant a finding that there had been a definite and unequivocal demand for cancellation previous to the sale; and, the policy having become void at the time of the sale by reason of a provision of the policy that it should be void if the insured property were sold without the assent of the insurance company, the plaintiff, after the sale, had no right to demand any return premium.

TWO ACTIONS OF CONTRACT. Writs in the Municipal
Court of the City of Boston dated August 22, 1932, and
September 7, 1932.

Upon removal to the Superior Court, the actions were
tried before *Morton*, J.

Each of the policies in question provided that "This
policy may be cancelled at any time at the request of the
insured, who shall thereupon be entitled to a return of the
portion of the . . . premium remaining, after deducting
the customary monthly short rates for the time this policy
shall have been in force"; and that "This policy shall be
void if . . . without . . . [the] assent [of the insurance
company], the . . . property shall be sold . . . ." Other
material evidence is stated in the opinion.

The judge ordered a verdict for the defendant in each action and reported the actions for determination by this court.

*D. Stahl, (J. W. Tushins* with him,) for the plaintiff.

*G. B. Rowell,* for the defendants.

CROSBY, J.   These are actions of contract to recover premiums paid under certain Massachusetts standard fire insurance policies, the second against the agent who wrote the policies, and the first against the company which issued them.

The declarations are for the same cause of action.   In the declaration in the case against Burnes the plaintiff alleges, in substance, that she was the holder of eight fire insurance policies covering certain premises in Boston, that the policies were cancelled, and that return premiums became payable to the plaintiff; that these return premiums were paid to the defendant who has failed to pay them to the plaintiff.   In the declaration in the case against the insurance company the plaintiff alleges that policies were issued to her and were cancelled by the defendant and that return premiums due her have not been paid.   The answers in the cases are the same, and include the defences that the actions were not brought within the period of limitations prescribed by the statutes; and that before the said cancellation the plaintiff transferred her interest in the property described in the policies, and thereby avoided them and extinguished any right to recover return premiums.

At the close of the evidence offered by the plaintiff the defendants rested and filed motions for directed verdicts, which were allowed.   The plaintiff duly excepted, and the cases are reported to this court upon the stipulation that, if any question of fact should have been submitted to the jury, the plaintiff in each case will be entitled to recover.

It appears from the report that the plaintiff was the owner of certain real estate upon which insurance policies in the Massachusetts standard form were issued by the companies through their agent, the defendant Burnes.   The

plaintiff became the owner of the property on January 28, 1926. It was then subject to three mortgages as follows: first, Haverhill Savings Bank; second, Sara Snyder; third, Emma D. Olson. The policies were originally issued on April 16, 1923, for a period of five years to the owners of the property at that time. On July 26, 1926, there was placed on each policy an indorsement making it payable to Sara Snyder, second mortgagee; this was done in reliance upon an alleged foreclosure by her of her interest as such second mortgagee. The registry of deeds, however, fails to show any record of such foreclosure, but satisfaction of the mortgage appears under date of August 13, 1926.

The plaintiff testified "that sometime in October [August?], 1926, she was the owner of the premises" covered by the policies; that at no time did she receive a return premium on the policies; that she personally made no demand on the companies for return premiums; that she owed the defendant Burnes or the companies $700 for the premiums on the policies; that she authorized her father, Simon J. Bennett, to employ counsel to bring suit against Mrs. Olson for $1,200; and that she authorized her father to make a demand for the return premiums. On August 13, 1926, the plaintiff sold the property to Mrs. Olson but did not at any time in writing assign, transfer or release any interest in the policies. Before the sale to Mrs. Olson the plaintiff's father commenced arrangements to dispose of the insurance. He testified that he had placed the insurance originally, and had acted in matters connected with it; that demands for premiums were sent to him; and that he dealt with Mrs. Olson, and tried to induce her to take the insurance when she should buy the property.

Upon the question whether Bennett in behalf of the plaintiff ever made any request of either defendant for a cancellation of the policies before the plaintiff sold the property, he testified as follows: "Before the transfer of August 13, 1926, took place he talked with Burnes at his office; he told Burnes that he was selling the property to Mrs. Olson; that she didn't want to take the insurance and

that he [Burnes] would have to cancel it . . . . He next talked with Burnes in the early part of July in consequence of a letter; that at that time he told Burnes not to bother him for the balance of the money as he intended to sell the property and cancel the policies because the other party didn't want to take them. Burnes told him . . . that cancelled policies are shrinkage and said, 'Why don't you use the premiums for policies?' and he told Burnes that he couldn't make her [the purchaser] and he will have to cancel as the party didn't want to take the insurance; that Burnes had told him to try to get the party to buy the policies from his daughter, otherwise the witness could not sell it and the witness would let Burnes know and he would cancel it."

The evidence shows that the plaintiff transferred her title to Mrs. Olson by delivery of the deed on August 13, 1926, and, on that day, several mortgages were discharged, and given. The record shows that the deed was recorded on August 21, 1926. It is plain that any demand after August 13, 1926, would not be effective. Bennett further testified that "On the day when the papers were recorded he . . . went to Burnes and told him that the papers were recorded and that he wanted the policies cancelled and that Burnes told him that he couldn't get the policies until Mrs. Olson sent in new policies . . . . Burnes told the witness to go again to see Mrs. Olson and . . . see if she would not take the policies. The witness promised Burnes to . . . see Mrs. Olson again."

There is no evidence which would warrant a finding that there was any definite, unequivocal demand or request by the plaintiff or by any one representing her to cancel the policies. All that appears is that, before the sale of the property to Mrs. Olson, Bennett was endeavoring to persuade her to take over the policies, but without success. Bennett did not make any definite request or demand for an immediate or future cancellation of the policies. It is said to be a "well-known principle that request for cancellation of an insurance policy must be unequivocal and absolute." *Magruder* v. *United States*, 32 Fed. Rep. (2d) 807, 810. *Lyman*

v. *State Mutual Fire Ins. Co.* 14 Allen, 329, 333.    *Clark* v. *Insurance Co. of North America*, 89 Maine, 26, 32.    *Davidson* v. *German Ins. Co.* 45 Vroom, 487.    See also cases in notes 32 C. J. pages 1259, 1260.    The conversations between Bennett and Burnes amounted at most to an expression of intention to cancel the policies at some time in the future. It follows that a verdict was properly directed for the defendant in each case as no demand or request was made for a cancellation of the policies before the sale and transfer of the property by deed dated August 13, 1926, and recorded August 21, 1926.    When the plaintiff sold the property before there was any valid cancellation, the policies by their terms became void, and she lost her right to demand return premiums.    *Parker* v. *Trustees of Smith Charities*, 127 Mass. 499.    *Elder* v. *Federal Ins. Co.* 213 Mass. 389, 391.    See also *Clinton* v. *Norfolk Mutual Fire Ins. Co.* 176 Mass. 486.    As the plaintiff is precluded from recovery for the reasons stated, it is unnecessary to consider the other defences relied on by the defendants.

In accordance with the stipulations recited in the report, the verdicts are to stand, and judgment is to be entered for the defendant in each case, and also in cases numbered respectively 282423, 282428 and 282431.

*So ordered.*